*348 Alice Robie Resnick, J.,
concurring in part and dissenting in part. I concur in the affirmance of the conviction, but I disagree with the majority’s conclusion that this case must be remanded for resentencing, and would affirm Campbell’s death sentence. Once again, as in State v. Green (2000), 90 Ohio St.3d 352, 738 N.E.2d 1208, a majority of this court applies an overly mechanistic interpretation of Crim.R. 32(A)(1) to a specific set of facts to reach the unwarranted conclusion that a defendant’s right of allocution was sufficiently violated to taint the sentencing.
As in Green, I have little disagreement with the general statements made by the majority about the right of allocution. However, when the proceedings below are examined for compliance with the specifics of that right, reversal is unwarranted.
The tenor of the majority opinion appears to acquiesce in Campbell’s view, set forth in his appellate brief, that his trial counsel played a role in causing the trial judge to erroneously conclude that the allocution right applied only to sentencing on the noncapital counts, and not to sentencing on the capital counts.
Campbell’s brief states that “[o]n March 27, 1998, the trial court heard arguments on the mitigating factors. After hearing the arguments of defense counsel on the mitigating factors, the trial court set the date for sentencing. The prosecutor then correctly noted that Campbell was entitled to allocution before sentencing. Defense counsel improperly stated, however, that Campbell was entitled to allocution on the noncapital counts only. The trial court agreed with defense counsel.”
At the sentencing on April 3, 1998, the trial court first allowed the state to select which capital count Campbell would be sentenced on. The state selected Count Three, so the trial court then merged the other capital counts into Count Three. The trial court then proceeded directly to deliver its sentencing opinion in its entirety, accepting the recommendation of the jury and sentencing Campbell to death. After dealing with matters related to Campbell’s appeal, the trial court entertained several victim-impact statements, and then, before sentencing on the noncapital counts, asked both of Campbell’s attorneys whether they had anything to say. After a short reply, the trial court explicitly said, “Mr. Campbell, do you have anything you want to say to the Court?” Campbell responded, “No, I don’t, your Honor.” At that point, the trial court proceeded to sentence Campbell on the noncapital counts.
I believe that the concepts of invited error, waiver, and harmless error and lack of prejudice all apply to the circumstances here.

Invited Error

The majority determines that invited error is not present because defense counsel did not “induce” the error, was not “actively responsible” for it, and “at *349 worst” acquiesced in it. I disagree. It is necessary for a complete understanding of the proceedings involved to set out in full the relevant discourse between the trial court, the prosecutors, and Campbell’s attorneys at the March 27, 1998 hearing, beginning at the point in the hearing where the parties had concluded their additional arguments on whether death was the appropriate sentence:
“THE COURT: Thank you very much. I’ll render my decision a week from today.
“MR. STEAD [assistant prosecutor]: What time was that on the 3rd?
“THE COURT: Let’s say 10 o’clock.
“MR. O’BRIEN [prosecutor]: Thank you, your Honor.
“MR. LUTHER [defense counsel]: Your Honor, at that time there will be no discussion by counsel. The Court will just come out and render the—
“THE COURT: Right. I’ll come out and render my decision and then I assume, once I’ve rendered my decision on counts One, Two, Three, and Four, then there will be a sentencing where you will be able to make statements and, of course, the — I assume the — at that point I can take statements on the—
“MR. LUTHER: On victim impact.
“THE COURT: Mr. Stead, you are looking kind of—
“MR. STEAD: I’m listening to—
“MR. O’BRIEN: I’m just saying that would the Defendant have an allocution right before the Court announces its sentencing decision on the 3rd[?]
“THE COURT: Yeah.
“MR. LUTHER: Yeah. After you’ve made your decision on Counts One through Four, then I think we have a right to make a statement in allocution as to the sentences on the other offenses.
“THE COURT: Right.
“MR. O’BRIEN: And we would have victim impact statements on the other sentences too.
“THE COURT: That’s what I was just saying. After I render, on One through Four, then on the second, Counts Five through Fourteen, at that point I will take statements and there will be a separate sentencing process that would go along afterwards.
“MR. LUTHER: Then you will go ahead and impose the sentence on the case.
“THE COURT: And I’ll impose the sentence on the other charges also. Okay. Does that sound all right with everyone?”
I believe that defense counsel’s statement “After you’ve made your decision on Counts One through Four, then I think we have a right to make a statement in *350 allocution as to the sentences on the other offenses” could plausibly be viewed as an affirmative statement that Campbell did not wish to exercise his right to allocution prior to sentencing on the capital count. It is not clear that Campbell’s trial counsel was proceeding under the erroneous impression that Crim.R. 32(A)(1) does not apply to capital cases, and I disagree with the majority’s ready acceptance of the view of Campbell’s present attorneys on appeal regarding the statement made by trial counsel. Since the phrasing of Crim.R. 32(A) does not distinguish between capital cases and noncapital cases, it seems beyond question that the rule on its face must apply to all criminal cases, and I do not believe that defendant’s trial counsel was indicating anything otherwise with his statement.
Instead, I read defense coimsel’s statement as subject to an interpretation that his client did not wish to make a statement prior to sentencing on the capital offenses, but perhaps would wish to make a statement prior to sentencing on the noncapital offenses. To the extent that there might be some error in the trial court’s failure to address Campbell personally on his right of allocution prior to sentencing on Count Three, I would find that the error was invited by Campbell’s trial counsel.

Waiver

Consistent with my view that Campbell invited any error that may have occurred, I also believe that Campbell’s failure to object in these specific circumstances waived any claims of error he may have. See State v. Williams (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. Imposing an obligation on the trial court to address the defendant personally in every circumstance prior to sentencing, even when the defendant has already expressed a desire not to speak, unnecessarily extends the requirements of Crim.R. 32(A)(1). That is especially true in this situation, where the trial court made sure to address the defendant personally before sentencing on the noncapital counts, and Campbell declined to speak. In State v. Reynolds (1998), 80 Ohio St.3d 670, 687 N.E.2d 1358, this court in essence adopted a substantial-compliance approach to this aspect of Crim.R. 32(A)(1). Although the majority states that this court has “recognized that a trial court’s failure to address the defendant at sentencing is not prejudicial in every case,” the majority in this case seems to adopt an absolutist interpretation of the rule that is actually at odds with Reynolds.

Harmless Error/Lack of Prejudice

The majority’s conclusion that this case is distinguishable from Reynolds is unconvincing. In Reynolds, 80 Ohio St.3d at 684, 687 N.E.2d at 1372, this court focused on several factors to find that the defendant was not prejudiced, stating, “A court’s error in failing to ask a defendant if he wants to make a statement *351 prior to sentencing is not prejudicial where, as here, the defendant makes an unsworn statement in the penalty phase, sends a letter to the trial court, and where defense counsel makes a statement on behalf of the defendant.”
Obviously, the list of factors in Reynolds is not an exhaustive one, and that case illustrates that prejudice on this issue must be determined on a case-by-case basis. One of the Reynolds factors is present in this case, and appears to be even stronger than in Reynolds, in that defense counsel spoke extensively on Campbell’s behalf, both in penalty-phase arguments and at the March 27, 1998 hearing, and were also offered an opportunity to speak at the April 3, 1998 sentencing.
The letter to the judge that the defendant sent in Reynolds is a factor not present in this case, but I believe that two other factors more than make up for that one — that Dr. Jeffrey Smalldon’s mitigation testimony repeated statements Campbell had made to him, and that Campbell was given an opportunity to make a statement before being sentenced on the noncapital offenses. On balance, I see this case as quite comparable to Reynolds, with roughly the same degree of prejudice, if not less. I would apply the precedent established in Reynolds to this case and find harmless error in these circumstances.
Additionally, had Campbell exercised his allocution right at the time he was addressed personally prior to sentencing on the noncapital counts, he would potentially have been commenting on Count Three as well. All of the noncapital counts at trial arose from the same series of events that gave rise to Count Three. Anything Campbell could have said would have applied to all of the charges against him, and he could have made “a statement in his * * * own ' behalf’ at that time. See Crim.R. 32(A)(1).
Finally, had Campbell made such a statement at that time, nothing would have prevented the trial judge from relying on the statement to reconsider his earlier sentencing decision on Count Three, since the sentence on Count Three was subject to modification until it was journalized.
In Reynolds, 80 Ohio St.3d at 684, 687 N.E.2d at 1372-1373, this court remarked that “[fjailure to provide a defendant the right of allocution could constitute reversible error in a future case.” I do not disagree with the general import of that statement; however, based on the record before us, this case is not the appropriate future case to fulfill the terms of the Reynolds remark. Since the majority finds reversible error where it should not be found, I dissent.
Douglas, J., concurs in the foregoing opinion.